NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| L.B. ON BEHALF OF S.B.<br>a Minor Child<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>      Defendant. | Civil Action No. 2:16-cv-08512-SDW<br><br>**OPINION**<br><br>September 14, 2017 |

**WIGENTON**, District Judge

  Before this Court is Plaintiff L.B. on behalf of S.B.'s ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Theresa Merrill's ("ALJ Merrill") denial of Plaintiff's claim for Supplemental Security Income ("SSI") under the Social Security Act ("The Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Merrill's findings dated April 14, 2015 are not supported by substantial evidence. Therefore, the Commissioner's decision is **REMANDED**.

**I.  Procedural and Factual History**

## A. Procedural History

On May 24, 2013, Plaintiff applied for SSI on behalf of her daughter S.B., alleging disability as of December 11, 2009, (R. 152), based on diagnoses of attention deficit hyperactivity disorder ("ADHD"), asthma, and a learning disability. (R. 82.) The application was denied both initially and upon reconsideration. (R. 102, 108.) Plaintiff requested a hearing, (R. 111), which was held on December 18, 2014 before ALJ Merrill. (R. 35.) Both Plaintiff and S.B. appeared before the ALJ, along with Plaintiff's representatives Randi Mandelbaum, Valerie Shore, and Ikemoa Ukwdiwe. (R. 35.) On April 14, 2015, ALJ Merrill issued an unfavorable decision, finding that S.B. was not disabled and denying Plaintiff's application for SSI. (R. 15-30.) On September 9, 2016, the Appeals Council denied Plaintiff's request for review. (R. 1-3.) Plaintiff now requests that this Court reverse the Commissioner's decision or, in the alternative, remand for further proceedings. (R. 38.)

## B. Factual History

### 1. S.B.'s Medical History

Shortly before Plaintiff filed for SSI, a coordination of care letter from Dr. Rachel Power ("Dr. Power") of University Behavioral Healthcare ("UBHC") indicated that S.B.'s diagnoses included PTSD and an academic problem. (R. 265.) The letter stated that S.B. "was exposed to domestic violence and continue[d] to show signs of fear and anxiety." (*Id.*) A letter sent several months later, on May 6, 2013, stated that, "In addition to PTSD, [S.B.] has been diagnosed with ADHD and stimulant medication has been started . . . ." (R. 247.) Treatment records from June 2013 through August 2014 also indicate a diagnosis of enuresis. (R. 268, 346, 358.)

The record discloses that S.B. was treated at UBHC from June 2013 through August 2014, where she was seen by several doctors. (R. 267-76, 345-66.) In S.B.'s initial visit, Dr.

Power delivered a "Good" prognosis given S.B.'s academic accommodations and recommended that S.B. attend both individual and family therapy. (R. 269, 271.) On July 22, 2014, medical assistant Karen Aizaga ("Ms. Aizaga") delivered a "Fair" diagnosis and pointed to issues between S.B.'s family and medical providers. (R. 362.) That report listed S.B.'s problems as including Academic Problems, PTSD, ADHD, asthma, and enuresis. (R. 358-59.) It specifically pointed to PTSD as a relevant diagnosis given S.B.'s difficulty processing trauma and loss. (*Id.*)

The record also includes outpatient reports from Saint Barnabas Healthcare System ("Saint Barnabas"), where S.B. received psychiatric treatment from several doctors, including Dr. Najeeb Riaz ("Dr. Riaz"). (R. 369-77.) In his notes, Dr. Riaz primarily addressed S.B.'s treatment for ADHD, noting that S.B. showed a good response to Strattera and was improving academically. (R. 371.) On multiple occasions, he noted that S.B. was both well-groomed and cooperative. (R. 369, 371.) S.B. had previously been prescribed Adderall for her ADHD and Plaintiff asked Dr. Riaz to prescribe it once more, but Dr. Riaz made the decision to start her on Lexapro instead in April of 2014, noting that Plaintiff seemed "preoccupied with Adderall." (R. 179, 373.)

S.B. saw neurologist Dr. Steven Lomazow ("Dr. Lomazow") on July 24, 2014, who performed a mental status examination. (R. 343.) Dr. Lomazow concluded that there were no "significant gross deficits" in S.B.'s memory but assessed that there was "probably a combination of a learning disability and [attention deficit disorder]." (*Id.*) Because Dr. Lomazow determined that S.B. responded well to Adderall in the past, he decided to restart her on a 10 milligram dosage. (*Id.*)

### 2. S.B.'s Educational History

S.B. attended University Elementary School from September 2009 until February 2012 and the Adelaide L. Sanford Charter School from September 2012 until June 2013. (R. 172.) She enrolled in the Discovery Charter School ("Discovery") in September 2013, the start of the third grade, where she remained until the time of the Commissioner's decision. (R. 278.) S.B. was provided with special education upon enrolling at Discovery. (R. 63.)

A first grade report card indicates "Weakness" in the majority of measurable categories, while report cards from 2011 through 2014 show several Cs, Ds, and Fs. (R. 215-21.) During the 2012-2013 school year, S.B. earned As in both music and PE as well as Bs in science, world language, and math. (R. 223.)

On September 16, 2013, a meeting between Discovery and Plaintiff determined that an evaluation of S.B. was warranted due to "Academic Concerns." (R. 338.) Between September 18, 2013 and October 16, 2013, an Individualized Education Program ("IEP") was developed and implemented for S.B. (R. 316.) It was decided that "[t]he nature and severity of [S.B.]'s educational disability is such that education in [S.B.]'s regular class with the use of appropriate supplementary aids and services cannot be achieved satisfactorily." (R. 329.) The plan called for weekly speech and counseling sessions as well as resource center instruction five times a week in both math and language arts. (R. 334.) The school determined that an Extended School Year Program was not necessary, as it felt that S.B.'s functioning could be expected to recuperate after the summer "in a reasonable amount of time." (R. 331.)

In October of 2014, Discovery conducted an annual review of S.B.'s IEP. (R. 385.) The report indicated that S.B. was currently functioning in the "Low Average Range" and that she continued to struggle with completing assignments both in class and at home. (R. 387.) The

4

report also indicated that classroom behaviors were good and that S.B. exhibited appropriate behavior in school. (R. 387, 393.)

A December 3, 2013 teacher questionnaire from Discovery indicated "obvious problems" in the categories of: Acquiring and Using Information; Attending and Completing Tasks; Caring for Herself; and Interacting and Relating with Others. (R. 186-90.) A learning evaluation performed by the school concluded, "Academically, [S.B]'s Academic Skills and her Academic Applications were shown to be in the average range; her Academic Knowledge was shown to be in the low range. Cognitively, [S.B.] showed an average ability in visual discrimination/tracking (Visual Matching)." (R. 283.) The report expressed concern about S.B.'s verbal expression, her limited phonic skills, and her visual perception confusion, among other things. (R. 279.)

### 3. Hearing Testimony

At the December 18, 2014 hearing, Plaintiff testified that she became concerned about her daughter when S.B. was approximately two years old. (R. 60.) Her main concerns at the time of the hearing were S.B.'s depression and asthma. (R. 74.) When asked about S.B.'s behavior, Plaintiff explained that her daughter will sometimes kick and punch when upset and that she once bit her own hand instead of hitting a girl who bullied her. (R. 68-69.) Plaintiff described S.B.'s ongoing issues as including nightmares, trouble sleeping, asthma attacks, mood swings, and bed wetting. (R. 67-70.) When asked why she applied for SSI on behalf of her daughter, Plaintiff testified that she needed assistance, especially being a single parent. (R. 74.) Plaintiff explained that she has struggled to pay for tutoring and that her daughter's problems are overwhelming for both of them. (R. 74.)

In response to questions from ALJ Merrill, Plaintiff testified that S.B. struggles with completing homework, understanding money, buttoning her shirt or tying her shoes, and making

5

new friends. (R. 49-51.) S.B.'s representative, citing medical records, testified that S.B. suffered from asthma, ADHD, PTSD, depression and a learning disability. (R. 40.) As a result, she explained, S.B. met the Social Security Administration ("SSA") Listing of Impairments ("Listing") 112.06 for anxiety and suffered from either marked or extreme limitations in five of the domains of functioning. (*Id.*)

## II. Legal Standard

### A. Standard of Review

This Court has plenary review of all legal issues on appeal of a decision by the Commissioner of Social Security. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). It is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa Apr. 15, 2009) (quoting *Consolo v. Fed Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's

decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v/ Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This court is required to give substantial weight and deference to the ALJ's findings if supported by substantial evidence. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargengrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**B. The Three-Step Child Disability Test**

A claimant's eligibility for Social Security benefits is governed by 42 U.S.C. § 1382. An individual under the age of eighteen will be considered disabled under the Act if he (1) is not engaged in substantial gainful activity and (2) has a medically determinable physical or mental impairment that results in marked and severe limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than twelve months. 42 U.S.C. § 1614(a)(3)(C)(i). A claimant must show that the "medical signs and findings" related to his ailment have been "established by medically acceptable clinical or laboratory diagnostic

7

techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

The SSA has established a three-step sequential process to evaluate the disability of an individual under the age of eighteen. 20 C.F.R. § 416.924(a). In step one, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. If the claimant is currently engaged in substantial gainful activity, then he is not disabled and the claim is denied. *Id.* If he is not, then the ALJ proceeds to step two.

In step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). If the claimant does not have such an impairment or impairments, then the ALJ will find he is not disabled. *Id.* If he does, the ALJ will proceed to step three, where it must be determined whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of an impairment in the Listings, found in 20 C.F.R. § 404, Subpart P, App. 1, or that functionally equals a listed impairment. 20 C.F.R. § 416.926a. In making this determination, the ALJ must assess the claimant's function in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

An impairment or combination of impairments functionally equals a Listing if it results in a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(b)(1)( i–v). A "marked" limitation in a domain is one that "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. §

416.926a(e)(2)(i). An extreme limitation is one that "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. 416.926a(e)(3)(i).

To determine the degree of limitation, the ALJ must consider the intensity and persistence of the claimant's symptoms. 20 C.F.R. § 416.929(c)(1). The ALJ must consider all available evidence including: the claimant's history, signs and laboratory findings, medical opinions, and statements from the claimant, his treating source, and other persons about the effect of the symptoms on the claimant. *Id.*

If the claimant's impairment meets or equals an impairment in the Listings, and meets the duration requirement, disability is presumed and benefits are awarded. 20 C.F.R. § 416.924(d). When the claimant's impairment does not meet or equal an impairment in the Listings, or does not meet the duration requirement, the individual is not disabled and the claim is denied. 20 C.F.R. § 416.924(d)(2).

### III. Discussion

On appeal, Plaintiff seeks reversal of the Commissioner's decision on four bases. First, Plaintiff argues that ALJ Merrill committed legal error by neglecting to consider substantial and relevant evidence in the record. (Pl.'s Br. at i.) Second, Plaintiff argues that the ALJ erred in failing to consider relevant and substantial evidence from S.B.'s treating physician in violation of 20 C.F.R. 416.927(c)(2). (*Id.*) Third, Plaintiff argues that the ALJ erred as a matter of law when she failed to provide adequate justification and analysis in concluding that S.B. did not meet or functionally equal Listing 112.06 and that S.B. was not disabled under any of the six domains. (*Id.* at ii.) Plaintiff insists that the ALJ set forth broad conclusory statements and failed to reference substantial portions of the record. (Pl.'s Br. at 17, 19.) Finally, Plaintiff argues that

416.926a(e)(2)(i). An extreme limitation is one that "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. 416.926a(e)(3)(i).

To determine the degree of limitation, the ALJ must consider the intensity and persistence of the claimant's symptoms. 20 C.F.R. § 416.929(c)(1). The ALJ must consider all available evidence including: the claimant's history, signs and laboratory findings, medical opinions, and statements from the claimant, his treating source, and other persons about the effect of the symptoms on the claimant. *Id.*

If the claimant's impairment meets or equals an impairment in the Listings, and meets the duration requirement, disability is presumed and benefits are awarded. 20 C.F.R. § 416.924(d). When the claimant's impairment does not meet or equal an impairment in the Listings, or does not meet the duration requirement, the individual is not disabled and the claim is denied. 20 C.F.R. § 416.924(d)(2).

### III. Discussion

On appeal, Plaintiff seeks reversal of the Commissioner's decision on four bases. First, Plaintiff argues that ALJ Merrill committed legal error by neglecting to consider substantial and relevant evidence in the record. (Pl.'s Br. at i.) Second, Plaintiff argues that the ALJ erred in failing to consider relevant and substantial evidence from S.B.'s treating physician in violation of 20 C.F.R. 416.927(c)(2). (*Id.*) Third, Plaintiff argues that the ALJ erred as a matter of law when she failed to provide adequate justification and analysis in concluding that S.B. did not meet or functionally equal Listing 112.06 and that S.B. was not disabled under any of the six domains. (*Id.* at ii.) Plaintiff insists that the ALJ set forth broad conclusory statements and failed to reference substantial portions of the record. (Pl.'s Br. at 17, 19.) Finally, Plaintiff argues that

the ALJ's determination that S.B. was not disabled was not supported by substantial evidence and should be reversed or, alternatively, remanded. (*Id.*)

ALJ Merrill did not consider substantial and relevant evidence regarding S.B.'s education and medical histories as they pertain to Listing 112.06 and the six domains of functional equivalence. Listing 112.06 states, "In these disorders, anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." 20 C.F.R. § 404, Subpart P, App. 1. The required level of severity is met if requirements from either both A and B or both A and C under the listing are satisfied. *Id.*

Upon examining S.B.'s educational history as it pertains to Listing 112.06, ALJ Merrill relied exclusively on three of eight exhibits from S.B.'s schools. The ALJ considered S.B.'s IEP, a teacher questionnaire, and Examiner Tumino's report, but did not consider S.B.'s grades and progress reports. (R. 24, 25, 214-23.) These records include several grades of C, D and F as recently as the 2013-2014 school year. (R. 221-22.).

Regarding S.B.'s medical history, this Court cannot determine whether all facets of S.B.'s medical history were considered and what information ALJ Merrill relied upon in her decision. For example, although the ALJ references exhibit 7F to state that S.B. returned to UBHC for treatment beginning in 2014, the ALJ failed to address the substance of the exhibit which links S.B.'s problems to PTSD, ADHD, enuresis and a learning disability. (R. 24, 345, 358.)

Other medical records are excluded entirely in ALJ Merrill's determination that S.B. did not meet Listing 112.06. These include exhibit 8F, which consists of Newark Beth Israel

outpatient reports from November 2013 through September 2014. (R. 366-67.) Among those records, for example, are 2014 notes from Ms. Aizaga which recommend that S.B. " . . . receive both individual and family therapy to address trauma-nightmares and enuresis, her social skills and peer relationship, her mood." (R. 367-77.)

The ALJ likewise excluded relevant and substantial evidence in evaluating whether S.B. had limitations in the six domains of functional equivalence. For example, although the ALJ determined that S.B. had less than marked limitation in *Acquiring and Using Information* because medication appropriately limited the effects of her ADHD, the ALJ did not cite information in S.B.'s educational records which demonstrated ongoing academic difficulties. (R. 26, 385-407.)

It is the opinion of this Court that the findings of the Commissioner are conclusory and fail to set forth how ALJ Merrill reached her decision, particularly as they pertain to the ALJ's findings on Listing 112.06 and the domains of functional equivalence. As such, this Court is unable to determine whether substantial evidence exists to support the finding of the ALJ.

### IV. Conclusion

For the reasons stated above, the Commissioner's denial of Plaintiff's claim for SSI on behalf of S.B. is **REMANDED** for further proceedings.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk  
cc: Parties

11